Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1557 | **DATE** | 5/27/2003 |
| **CASE TITLE** | USA ex rel. James Blottiaux vs. Eugene McAdory | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. James Blottiaux's petition for habeas corpus is denied. Judgment is entered in favor of the respondent and against the petitioner.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 28 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | |
| RO | courtroom deputy's initials | 03 MAY 27 PM 4:07 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., JAMES BLOTTIAUX, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>EUGENE MCADORY, Warden, )<br>Menard Correctional Center, )<br>)<br>Respondent. ) | No. 03 C 1557<br><br>Judge Ruben Castillo<br><br>DOCKETED<br>MAY 2 8 2003 |

## MEMORANDUM OPINION AND ORDER

In 1999 James Blottiaux was convicted of murder and arson in the 1965 car-bombing death of a young woman in Palatine, Illinois. He was sentenced to 100 to 300 years' imprisonment, and his conviction and sentence were affirmed on direct appeal. Blottiaux now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Blottiaux's petition is denied. (R. 1-1.)

## RELEVANT FACTS[1]

In 1965, twenty-two year old Cheryl Rude worked as a show rider and instructor for George Jayne's Tricolor Farms stables in Palatine, Illinois. On June 14, 1965, Rude was killed when a bomb planted on her employer's car exploded while she was in it. Authorities investigated the crime scene and collected evidence, but no suspects were arrested or tried at the time. In fact, the case remained unsolved for almost thirty years, until Blottiaux's arrest and indictment in 1997. After his arrest, Blottiaux requested access to the State's evidence. In

---

[1] We presume that the factual determinations by the State court are correct. *See* 28 U.S.C. § 2254(e)(1). Accordingly, we rely on the facts set forth in the Illinois Appellate Court's decision in *People v. Blottiaux,* No. 1-99-4235 (Ill. App. Ct. Nov. 21, 2001) (R. 10, Ex. G.)

attempting to locate it, the State discovered that at some point during 1967 several pieces of evidence in the investigation were mistakenly discarded by the Chicago Police Department during a "mass destruction." This evidence included, but was not necessarily limited to, the following: (1) fragments of the "leg wires" attached to the explosives; (2) a receipt from the place where Blottiaux and an associate purchased explosives, purportedly bearing Blottiaux's handwriting; (3) an alleged tape recording of a witness' statement to the police in 1965; (4) an alleged transcript of that taped statement; (5) the witness' psychiatric records; and (6) photos used in photo arrays with various witnesses.

On April 26, 1963, Blottiaux visited an acquaintance, Haldane Cleminson, and asked him to make a pipe bomb to place in another man's car. Cleminson, who later received immunity by testifying at Blottiaux's trial, agreed to make the bomb. The two went to a local gun store to purchase the bomb materials, which Blottiaux paid for. Later, Blottiaux, Cleminson and another friend were pulled over by the police, who discovered the pipe bomb, a sawed-off shotgun and a pistol. The three men were charged with illegal possession of explosives; they pleaded guilty and were sentenced to probation.

During 1965 Blottiaux worked for Silas Jayne, a suburban stable owner, as a horse trainer. Silas Jayne had been engaged in a long-running feud with his brother, George Jayne. In fact, Silas was later implicated and convicted in connection with George's murder. Around June 10, 1965, Blottiaux again contacted Cleminson to ask how to wire a bomb to a car. Cleminson told Blottiaux that he would need to purchase electrical detonators and dynamite. Blottiaux told Cleminson that the man he was working for was paying him $5,000 to bomb the car and that he would share the money with Cleminson if he assisted him. Cleminson refused, but did agree to

go with Blottiaux to purchase the dynamite so long as Blottiaux gave Cleminson half of it. Cleminson told Blottiaux he would need ten sticks of dynamite to do the job. Cleminson and Blottiaux went to purchase the dynamite, leg wires, at least one of which was orange, and blasting caps at a place called Ludwig's. Ludwig's gave the men a receipt, which Blottiaux supposedly signed with a fictitious name. Various witnesses testified that on the day of the bombing they saw an unfamiliar man wandering around the stables. None of these witnesses, however, positively identified the stranger as Blottiaux to the police.

Arthur Nolan, a member of the Chicago Police Department's bomb and arson squad, inspected the crime scene shortly after the explosion. He determined that the explosion originated under the hood of the car and that the explosive device was a high-velocity type such as dynamite. The device was detonated by a blasting cap, which contained two leg wires. One leg wire went to the ground, while the other was attached to a power source such as a spark plug or distributor cap. Turning on the power source exploded the blasting cap, which then detonated the dynamite. Nolan found a length of orange-colored leg wire in the immediate area of the explosion. The color is significant because different companies use different colors in manufacturing blasting caps and leg wires. Nolan testified that leg wires can be sold in any length needed and also can be spliced together to make them longer. A discrepancy in the record existed as to the length of the leg wire used in the bombing. One investigation report identifies the orange leg wire as approximately 25 feet in length, whereas Nolan's own report indicated that the leg wire he recovered was 14 feet long. The missing receipt from Ludwig's apparently showed that Blottiaux and Cleminson purchased 6-foot leg wire. On direct appeal, Blottiaux made much of this discrepancy, claiming that having access to the evidence that was destroyed

would have exonerated him because the leg wire found on the scene was a different length than the ones he allegedly purchased at Ludwig's.

Eileen Garcia, the girlfriend of one of Blottiaux's friends, testified at Blottiaux's 1999 trial that in March 1966 Blottiaux told her that he had "done a job" in Palatine for Silas Jayne. When Garcia asked Blottiaux if he had a hand in Cheryl Rude's killing, he told her that the wrong person had been killed but that the police would never tie him to the bombing. Various police and ATF investigators also testified at trial about their role in investigating the murder, both in the 1960s and in the renewed effort during the 1990s. They recounted interviews with various witnesses as well as Blottiaux.

The jury found Blottiaux guilty of murder and arson. He was sentenced to a term of imprisonment of not less than 100 years and not more than 300 years. On direct appeal Blottiaux raised three issues: (1) whether the destruction or loss by the police department of certain items of evidence deprived Blottiaux of his right of confrontation, his right of compulsory process and his right to due process; (2) whether Defendant's Fifth Amendment rights, his right to due process and his right to bail were violated because the prosecution introduced statements he made at a bond hearing;[2] and (3) whether there was sufficient evidence to convict him. The Illinois Appellate Court affirmed the convictions and sentence. Blottiaux next filed a petition for leave to appeal to the Illinois Supreme Court, raising only the issue of whether he was denied due process by the loss of certain items of evidence. The Illinois Supreme Court denied his petition

---

[2] The prosecution introduced evidence at trial of Blottiaux's statement at his bond hearing in 1997. At the hearing Petitioner was asked whether he told the police in 1995 that in 1965 Silas Jayne offered him money to blow up his brother George. Blottiaux replied that he had told police that Silas made that offer in front of several people, but that the request was not directed towards him specifically.

4

in April 2002. Blottiaux did not seek post-conviction relief in the state court and filed the present petition for habeas corpus relief in March 2003.

## ANALYSIS

Blottiaux's case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Before a federal court will consider a petition for a writ of habeas corpus on its merits, the petitioner must: (1) exhaust all remedies available in state courts, 28 U.S.C. § 2254(b)(1)(A), and (2) fairly present any federal claims in state court first, or risk procedural default, *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). Exhaustion requires the petitioner to present his claims to the highest state court for a ruling on the merits. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991). Full and fair presentment requires that a petitioner give state courts "a meaningful opportunity to pass upon the substance of the claims [petitioner] later presses in federal court." *Spreitzer v. Schomig*, 219 F.3d 639, 645 (7th Cir. 2000) (internal citation omitted). Notwithstanding a procedural default, habeas corpus review may still be available if the petitioner can show cause for the default and actual prejudice, or demonstrate that a failure to consider the claim will result in a fundamental miscarriage of justice. *Id.* at 647; *United States ex rel Snyder v. Sternes*, 201 F. Supp. 2d 853, 856 (N.D. Ill. 2002).

Respondent concedes that Blottiaux fully exhausted his remedies by appealing his conviction to the Illinois Appellate and Supreme Courts, but Respondent notes that several of Blottiaux's claims are procedurally defaulted for failure to fully and fairly present them in state court. First, Respondent claims that Blottiaux did not fully and fairly present his argument on direct appeal that his confrontation and compulsory-process rights were abridged by the police

5

department's destruction of evidence. As noted above, a habeas corpus petitioner must give the state court "a meaningful opportunity" to address the substance of the claims he wishes to raise later in federal court, *Spreitzer*, 219 F.3d at 645, and present his claims in such a way as to "fairly alert the state court to any applicable [federal] constitutional grounds for the claim," *Bocian*, 101 F.3d at 468 (internal citation omitted). To this end, full and fair presentment requires more than a mere "passing reference" to the constitutional issue; instead, the petitioner must have placed both the operative facts and the controlling legal principles before the state courts. *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). Blottiaux styled his first issue on appeal as "[t]he prosecution's deliberate and unexplained destruction of evidence and its failure to preserve evidence denied the defendant due process of law, confrontation, and his right to compulsory process guaranteed to him by the state and federal constitutions." Although he identified confrontation and compulsory process as part of his first argument, he completely ignored the issues in his brief and instead focused on his claim that his due process rights were violated by the destruction of the evidence. He made nothing more than a passing reference to two Supreme Court cases before moving on to his due process arguments and did not in any meaningful way explain in his brief the legal principles and facts supporting the compulsory process or confrontation claims. Thus we conclude that he has procedurally defaulted those claims.

Second, Respondent argues that Petitioner's bail argument is procedurally defaulted because he failed to present it in his petition for leave to appeal to the Illinois Supreme Court. It is well-established that a state prisoner in Illinois must present each of his claims to the state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement of § 2254. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999). In *O'Sullivan* the Supreme

Court reiterated the principle that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which in Illinois involves a two-tiered system of appeal. *Id.* at 845; *see also* Ill. Sup. Ct. R. 603. Blottiaux's petition for leave to appeal to the Illinois Supreme Court raised only the issue of whether his due process rights were violated by the police department's destruction of "evidence relevant to the innocence of the defendant" and "by placing the burden upon the defendant to show the bad faith of the unknown police officers." (R. 10, Ex. I, Pet. for Leave to Appeal.) Because Blottiaux failed to raise his bail-hearing argument before the Illinois Supreme Court, the issue is procedurally defaulted. Thus, we turn to the sole remaining issue in this case—whether Blottiaux's due process rights were violated by the police department's destruction of certain pieces of evidence.

Under AEDPA, we may grant a writ of habeas corpus only if Blottiaux demonstrates that the state court's adjudication of the claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, *see* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362 (2000), or if the decision was premised on an unreasonable determination of facts, *see* 28 U.S.C. § 2254(d)(2). A state court's decision is "contrary to" Supreme Court precedent if "the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Williams*, 529 U.S. at 405-06. Under the second prong of § 2254(d)(1), habeas

7

corpus relief is appropriate if a state court unreasonably applies the facts of the case to governing Supreme Court precedent. *Bell,* 535 U.S. at 694; *Williams,* 529 U.S. at 413. Blottiaux does not specifically identify the precise section of § 2254 on which he relies, but we conclude from the parties' submissions that his habeas corpus claim rests on the "unreasonable-application" prong because he essentially argues that the Illinois Appellate Court unreasonably applied prevailing Supreme Court precedent to the facts of his case.

With respect to Blottiaux's claim that the state violated his Fourteenth Amendment right to due process by destroying salient evidence prior to trial, the Illinois Appellate Court exhaustively analyzed both the controlling Supreme Court precedent and the specific items of lost evidence that Blottiaux claims prejudiced him at trial. The court discussed in depth the test articulated in *Arizona v. Youngblood,* 488 U.S. 51 (1988), wherein the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. The appellate court next applied the *Youngblood* test to the facts at hand and determined that there had been no showing of bad faith on the part of the police officers who destroyed the evidence in 1967. The court also examined each piece of missing evidence and concluded that the evidence was only "potentially useful" as opposed to truly exculpatory and thus fell within the parameters

of *Youngblood*.[3] Blottiaux has not shown that the Illinois Appellate Court's rulings were an unreasonable application of *Youngblood* to the facts of his case.

## CONCLUSION

For the foregoing reasons, we deny Blottiaux's petition for habeas corpus. (R. 1-1.) The Clerk is instructed to enter final judgment pursuant to Federal Rule of Civil Procedure 58 against Petitioner.

ENTERED:

Judge Ruben Castillo
United States District Court

Date: May 27, 2003

---

[3] Perhaps realizing that his destruction-of-evidence claim under *Youngblood* is without merit, Blottiaux attempts in his reply brief to re-cast his argument as a evidence-suppression argument under *Brady v. Maryland*, 373 U.S. 83 (1963). Blottiaux takes the Illinois Appellate Court to task for allegedly "confining its examination of the record strictly to the items of evidence which Petitioner was able to show were destroyed" and thus avoiding a finding of due process violations under *Brady*. Judges are not expected to be mindreaders. "[A] litigant has an obligation to spell out his arguments squarely and distinctly, or else forever hold his peace." *United States v. Ramirez-Rivera*, 241 F.3d 37, 40 (1st Cir. 2002). Blottiaux did not develop a *Brady* argument on direct appeal and it was his decision to single out the six specific pieces of destroyed evidence for the Illinois Appellate Court's review. Blottiaux cannot now change course and blame the state courts' lack of prescience in failing to decide arguments that were not presented to them.

9